# Exhibit A

Joseph A. Kroeger (ASB #026036)
Amelia A. Esber (ASB #031545)
Audrey E. Chastain (ASB #033998)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
Facsimile: 520.884.1294
E-Mail: jkroeger@swlaw.com
        aesber@swlaw.com
        achastain@swlaw.com

*Attorneys for Plaintiff Travelers Property Casualty Company of America*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN PONY EXPRESS, Inc., an Arizona corporation; ARIZONA TAXI MANAGEMENT LLC, an Arizona limited liability company; and VIP TAXI LLC, an Arizona limited liability company.<br><br>Defendants. | No. C20183791<br><br>**ACCEPTANCE OF SERVICE** |

Kevin DeSantis, having been retained as counsel for Defendants in the above entitled action, does hereby accept service of process on their behalf in this action, and acknowledges receipt of the Summons for all Defendants, Complaint, Civil Cover Sheet, and FASTAR Certificate, upon July 31, 2018, as though the same had been served upon the Defendants by the Sheriff or other person duly appointed or authorized by law to serve process. By this acceptance of service, the Defendants do not waive any defenses or any objections to the venue or to the jurisdiction of the Court.

Kevin DeSantis

4843-3227-1982.1

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
7/31/2018 12:08:15 PM
BY: ALAN WALKER
     DEPUTY

Case No. C20183791
HON. BRENDEN J GRIFFIN

Joseph A. Kroeger (ASB #026036)
Amelia A. Esber (ASB #031545)
Audrey E. Chastain (ASB #033998)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
Facsimile: 520.884.1294
E-Mail: jkroeger@swlaw.com
        aesber@swlaw.com
        achastain@swlaw.com

*Attorneys for Plaintiff Travelers Property Casualty Company of America*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN PONY EXPRESS, Inc., an Arizona corporation; ARIZONA TAXI MANAGEMENT LLC, an Arizona limited liability company; and VIP TAXI LLC, an Arizona limited liability company.<br><br>Defendants. | No.<br><br>**COMPLAINT** |

Travelers Property Casualty Company of America ("Travelers"), for its Complaint against Defendants American Pony Express, Inc. ("American Pony Express"), Arizona Taxi Management LLC ("Arizona Taxi"), and VIP Taxi LLC ("VIP Taxi"), hereby alleges as follows:

### Nature of Action

1. Defendant American Pony Express is an Arizona corporation engaged in the business of providing taxicab and other transport services throughout Pima County, Arizona.

2. On or about September 7, 2011, Defendants applied to the National Council

on Compensation Insurance ("NCCI"), Arizona's assigned-risk plan administrator, for a workers' compensation insurance policy, as they were unable to secure workers' compensation coverage in the voluntary market.

3. The responsibility for writing the workers' compensation policy was assigned by NCCI to Travelers. Travelers then wrote and issued an assigned-risk workers' compensation insurance policy, 6JUB2E457452-14 (the "Policy"), to Defendants.

4. Based upon representations made by Defendants in their application, the premium was calculated based on an estimate.

5. At the conclusion of the policy period, Travelers exercised its right under the Policy to request information related to the Policy and its premium calculation, for the purposes of calculating the final premium due.

6. Once Travelers began to seek information related to Defendants' labor force—information that was required for Travelers to be able to conclusively determine the exposure presented under the Policy and the resulting premium—Defendants willfully withheld the requested information, despite numerous written and verbal requests from Travelers and in disregard of its contractual obligation to provide the requested information to Travelers.

7. During the audit period, Travelers learned that Defendants relied on the use of contractor taxi drivers to handle medical and social services transport calls. Travelers determined that these drivers are not sufficiently independent of Defendants' direction and control while performing scheduled medical and social services transport, and presented risk under the Policy.

8. Travelers is not here before the Court because it chooses to be or wishes to be. Rather, Defendants, by steadfastly refusing to provide Travelers with information they are contractually obligated to provide, has forced Travelers to come before this Court and utilize the Court's discovery procedures to compel Defendants to provide information they were contractually required to provide long ago.

**Parties and Jurisdiction.**

9. Travelers is a Connecticut corporation authorized to conduct business in Arizona.

10. American Pony Express is an Arizona corporation, doing business within Pima County, Arizona.

11. Arizona Taxi is an Arizona limited liability company, doing business within Pima County, Arizona.

12. VIP Taxi is an Arizona limited liability company, doing business within Pima County, Arizona.

13. A substantial portion of the relevant events and occurrences from which this Complaint arises occurred in Pima County, Arizona.

14. This Court has jurisdiction over this action under A.R.S. § 12-123.

15. Venue is proper in this Court under A.R.S. § 12-401.

**General Allegations**

**Arizona requires employers to carry workers' compensation insurance.**

16. A.R.S. § 23-901 *et seq.* sets forth the State of Arizona's requirements for employer-provided workers' compensation insurance. In general, under A.R.S. § 23-902(A), any person who employs any workers or operatives regularly employed (regardless of duration, but in the usual trade, business, profession or occupation of the employer) in the same business or establishment must provide workers' compensation insurance to its employees.

17. A.R.S. § 23-902(B) defines when an individual is an employee, as opposed to an independent contractor, of the employer. It provides that "[w]hen an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is part or process in the trade or business of the employer, then the contractor[] . . . [is], within the meaning of this section, [an] employee[] of the original employer." The statute further defines "part or process in the trade or business of the employer" as "a particular work activity that, in the context of an

ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees."

### American Pony Express's Application for Workers' Compensation Insurance

18. On September 7, 2011 American Pony Express submitted an application for workers' compensation insurance to the National Counsel on Compensation Insurance (NCCI Application Number 26958690) ("Application").

19. The Application consisted of an ACORD 130 form and an ACORD 133 Supplemental Form.

20. The Application represents that American Pony Express's employees performed work in four class codes: Clerical Office Employees NOC (Class Code 8810), Bus Co.: All Other Employees Drivers (Class Code 7382), Bus Co.: Garage Employees (Class Code 8385), and Clerical Officer Employees NOC (Class Code 8810).

21. The Application represents that for the Bus Co.: All Other Employees Drivers classification (Class Code 7382), American Pony Express employed seven full-time employee at an estimated annual remuneration of $400,000.

22. The Application also represents that American Pony Express does not use sub-contractors, does not sublet labor without certificates of insurance, and does not lease employees to or from other employers.

### American Pony Express's Policy

23. The Policy was issued as an assigned-risk workers' compensation policy, and provided insurance to Defendants' employees, applying to bodily injury caused by accident or bodily injury by disease, suffered during the course of the employee's employment.

24. Under the express terms of the Policy, Travelers has a right to examine and audit all records that relate to the Policy, and Defendant is required to provide those records to Travelers upon request. For instance, the Policy states, under Part Five — Premium, as follows:

    C.    Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

F.   Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

G.   Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

**Calculation of Premiums**

25.   Based on the representations made by American Pony Express in its Application, NCCI calculated an estimated premium based on the belief that American Pony Express had an estimated annual payroll of $1,197,000 and did not use leased employees or subcontractors.

26.   For the Policy's first year in effect (from September 1, 2011 to September 1, 2012), NCCI estimated that Defendants owed $43,880.00 in premium.

27.   American Pony Express renewed the Policy for the policy period of September 1, 2012 through September 1, 2013.

28.   American Pony Express also renewed the Policy for the policy period of September 1, 2013 through September 1, 2014.

29.   For the policy period from September 1, 2013 to September 1, 2014, NCCI

estimated that Defendants owed $363,045.00 in premium.

30. American Pony Express renewed the Policy for the policy period of September 1, 2014 through September 1, 2015. During this policy period, the Policy Identification Number was 6JUB2E457452-14.

31. For the policy period from September 1, 2014 to September 1, 2015, NCCI estimated that Defendants owed $13,963.00 in premium.

32. Had American Pony Express disclosed that it relied on leased and contract labor that may create exposure to Travelers under the Policy, the estimated premium would have been substantially higher for the policy periods.

33. American Pony Express failed to pay the Premium, despite demand for payment.

34. As of the filing of this Complaint, Defendants owe Travelers $420,888.00 in Premium.

## Count One

### Breach of Contract

35. Travelers incorporates the preceding paragraphs as if fully set forth herein.

36. Defendants repeatedly breached their contractual obligations to Travelers under Part V, Section F of the Policies, by failing to provide information related to the Policies.

37. Defendants further breached the terms of the Policy by refusing to allow Travelers to conduct a full and final audit of the Policy premium, in breach of Defendant's obligations set forth in Part V, Section G of the Policy.

38. Travelers has been damaged as a direct and proximate result of Defendant's breaches of the Policy, including having to incur attorneys' fees in an effort to procure this information.

39. Defendants owes a properly due and owing premium balance of $420,888.00.

40. Despite repeated demands for payment, Defendants has breached the Policy

by failing to pay the premium amount calculated during the final audit.

41. Travelers has been damaged as a direct and proximate result of Defendants' breaches of the Policy.

**Wherefore**, Travelers prays for entry of judgment against Defendant as follows:

A. For compensatory damages in the amount of the difference in annual premium actually charged to and paid by Defendant and the amount that should have properly been charged;

B. For compensatory damages incurred by Travelers for its efforts to obtain information from Defendant that they are required to provide;

C. For pre- and post-judgment interest at the maximum rate allowed by law;

D. For an award of Travelers' reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01; and

E. For any other relief the Court deems proper under the circumstances.

DATED this 31st day of July, 2018.

SNELL & WILMER L.L.P.

By: /s/ Joseph A. Kroeger
Joseph A. Kroeger (#026036)
Amelia A. Esber (#031545)
Audrey E. Chastain (#033998)
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
*Attorneys for Travelers Property Casualty Company of America*

4852-1280-3652